Young v. Crofts,02-35811 Crofts,02-35811 Good morning, Judge Fletcher, Judge Reinhardt, and Judge Gould. You may please the court. My name is Jeffrey Angel. I'm an attorney out of Bozeman, Montana, and I'm here with co-counsel Craig Miles, who practices out of Fort Collins, Colorado. We are here today in two combined cases. I will speak primarily to the first case, and Mr. Miles will speak to the second case. The court dismissed Young v. Croft, finding that it lacked jurisdiction to hear the case. In Montana, we have a policy, once classified as a non-resident, the student retains that status for three years of law study. That is the strongest of the many publications of the rule that we apply in our state. This lawsuit challenges the application in that form. The district court's decision dismissing the case summarizes. Now, that's just sitting there without a citation that I can understand. What's that from? That is from the law school catalog that was entered into the record in the first case, and it's found on the residency application process, and it looks like it's. . . No, I don't find. . . All of a sudden, I see that citation down there. I'm wondering if you're telling me this isn't a statute. Okay, no, I saw it as part of the law school. And did you have a clip that could hold that up higher on there? The bottom part certainly isn't legible from this side of it. Maybe you can just hold it in front of you as you argue. Why don't you just have the other claimants' counsel hold it up for a minute, and I'll read it. You don't have to hold it the whole time. You've got to go up higher. I'm sorry. Thanks. The court summarized the standard that they applied to dismiss the case, and this is on page 13 of the order. They said to establish an Article III standing to sue state officials in their individual capacity and to present a viable 1983 claim, the plaintiffs would have to allege that the members of the board or the commissioner individually took specific actions to deprive the plaintiffs of their constitutional rights. Now, the court based its dismissal upon its determination that no such allegations in the pleadings or in the evidence tendered by plaintiffs show that the named defendants took any action with respect to the plaintiffs. Interestingly, if you go back to page 2 of the court's order, the court summarizes accurately the complaint where it says, the court recites, Plaintiffs allege that defendants acting in their individual capacity enacted and applied unconstitutional, irrebuttable presumptions preventing the class members from obtaining residency status for tuition purposes during the tenure. The rule we apply, or these defendants apply in Montana, is a rule that requires you to retain the status of out-of-state residency for tuition purposes. And, for example, in the law school, that means four-fold increase in tuition. The Board of Regents, and this is in the record in the appellee's brief, established an appeal policy. And the court recited in its order that that policy is constitutional on its base. But that's not what we're challenging. The challenge in Young v. Croft is the fact that they apply a de facto rule that is unconstitutional. They apply it by publishing it in the law school catalog. They publish it in the regular university catalog. And it says in bold, Do not register for more than six credits per semester during the 12-month waiting period. Right before school starts, they publish it in the local student newspaper, the Kaiman. And that says the requirements that students want to become residents must take less than six credits, was added in 1992. It's cut and dried. We really do not make any exceptions. That's Marlene Bombeck, the registrar for the University of Montana out of Missoula. We alleged the connectivity between the specific defendants and the plaintiffs in Young v. Croft by alleging, as the court recited on page two of its order, that Cross and the board adopted and applied this de facto policy to disseminate the information to the people. Once classified as a nonresident, the student retains that status for three years, disseminating all of the materials. And if somebody actually appealed that decision in the administrative process, you'd end up with a letter from Mr. Cross, who is the commissioner of higher education, the defendant in both cases. And he says clearly in the letter, and he has it in bold base there, the period, the 12-month waiting period, which we do not contest, does not run for any period of time during when the student takes more than six credits. What the university has done is created an obstacle, a brick wall, that the students cannot get past. And they did that because they recognized that people wanting to go to school will not sit and do nothing for an entire year. They're going to pursue educational goals. Were you able to get any discovery in this case? No. In Young v. Croft, we were not allowed any discovery. In DeAngelo v. Croft, which followed, they allowed us discovery, but we received written discovery, had a deposition scheduled about ten days later, and the day before the deposition of the dean of the law school, the case was dismissed. And so we were not in either case able to introduce any discovery into the record. Now, when you say had written discovery, what do you mean? In this second case? After the hearing to dismiss in the second case, we are allowed to prefer written discovery. It was answered. The intention then was we would use it at the deposition and introduce that into the record. But this was not introduced into the record, upon which the district court based its decision in the second case, in the DeAngelo case? This is all in the record. I see. Okay. Yes. And I'm going to... And with respect to the second case, Your Honor, the interrogatories were not made part of the record that the district court applied. Okay. If I could just supplement the comments of Mr. Angel with a couple of facts that were not considered at all by Judge Thomas. In the defendant's excerpt, supplemental excerpt of record, Judge Thomas did have a concern with the connectivity. He couldn't bring it up to the Board of Regents. I can see that. And show the connectivity between the specific defendants and the specific plaintiffs in that case. I think that Judge Thomas did not get an opportunity to consider all the facts. And it's very clear in the lack of approach provided in this case. What is this? Defendant's excerpt, supplemental excerpt of record. In the residency policy 940.1, the commissioner, Crofts, once the Board of Regents adopts the residency policy, is supposed to assign it to the executive secretary, which is Crofts. And Crofts is supposed to consult with the campus, each of the individual campuses, and actually create or implement that policy through manual of operations. The result of that, of course, is all of the very consistent use of the irrebuttable presumptions that we've shown. And also, Crofts uses the same irrebuttable presumptions of non-residency on appeal. And so that, I believe, creates the connectivity that Judge Thomas may have found lacking. In the second case, Your Honor, in D'Angelo v. Crofts, I'd like to spend just a moment to address the issue of why Sarah D'Angelo and Bryce Flock's claims were considered not to be right, and also take a few moments to address the issue of the statute of limitations with respect to Plano-Gibson. There is no rule that says that Sarah D'Angelo or Bryce Flock, as non-applicants, could not be victims of a widespread policy of this nature. And for applicants and non-applicants alike, the rule that should be applied is the rule that the claim accrues when the plaintiff knows or should have known of the injury that was the basis of the action. With respect to Sarah D'Angelo and Bruce Flock, when they knew of their injury is the moment when they understood that their constitutional rights were violated by this widespread policy. In that case, it is our contention that the district court did not consider certain facts with regard to looking at the communications to each of these plaintiffs that would have led to the conclusion that they knew it before they made the formal application, or they did not have to make the formal application because the plaintiffs knew that their constitutional rights had been violated. They would never be able to obtain in-state residency status and overcome the irrebuttable presumption applied by the defendants. In law school, the first point of the first thing that you receive is an application from the University of Law School, and that's the first initiation that you receive of defendant's policy is that you can never obtain residency status if you take more than six credit hours in the waiting period as you're going to law school. This is enough to deter many plaintiffs from ever filing a formal application, but it doesn't end there. There is a widespread dissemination of information both in the Missoulian newspaper, which is part of the record, and also as part of guidelines that is handed out by the registrar's office that says do not take more than six credit hours per semester, and if you do this, you cannot ever overcome the irrebuttable presumption and obtain residency status. More than that, with regard to Bryce Flock's situation, Bryce Flock also was a classmate of Leslie Garvin. In Young v. Crofts, Leslie Garvin actually filed a formal application, took it on appeal to President Denison at the University of Montana, and was denied in-state residency status in both her initial determination and on appeal to the president, and Bryce Flock as a classmate observed this condition as well as being communicated to through the use of the application forms, the disseminated information, widespread newspaper articles, and the registrar's office saying that it's cut and dried, you can never obtain residency if you take more than six credit hours per semester. We think that this raises a dispute with the genuine material fact, and I think these facts must be looked on in a light most favorable to the plaintiff. And unlike in Young v. Crofts where Judge Thomas then resolved the dispute by parsing out facts that were favorable to the defendants and unfavorable facts to unnamed plaintiffs or unnamed defendants, do you feel that this Court must resolve that dispute in favor of the plaintiffs under the standard, which is the summary judgment standard? Thank you, counsel. May it please the Court, my name is Leroy Schramm. I'm legal counsel for the 15 individual defendants, nine in the first case and six in the second case. They are being sued as individuals here. I think that's important to remember. I will address cases together. The issues are somewhat mixed together and obviously the subject matter intertwines, but what we really have is three plaintiffs in the first case against the nine defendants, 27 cases, and then three versus six in the second case, so we have really 45 different cases. That's an unconventional definition of case. Well, we have causes of action, I think you might say. Pardon me, I was being imprecise there. The first thing that I think we have to keep in mind is the elementary standard that you can't sue someone as an individual under Section 1983 unless there is, as Judge Thomas said, a nexus between an act they did and the harm. And let's look at this for example. This is not, in the first case, the regents are eight of the defendants and the commissioner of higher education is the ninth. This is not a regent's policy. It's not a commissioner's policy. It is a statement in the law school catalog, not now removed, but it was in there then. It is not, as Judge Thomas points out and was acknowledged at the lower level, it is not a reflection of the university policy. The only, in the first case, none of the defendants were responsible for the law school catalog. That's what you say, but that's not what the plaintiffs say. Well, no. Well, there is no evidence. That's because we haven't had any discovery. We've had. The court admitted documents and looked. First of all, there is nothing in the pleading that says any of the defendants are responsible for that statement, for the law school catalog. Well, I'm now reading from Judge Thomas' order, the same language that was read to us previously by your adversary. Judge Thomas writes, Well, that's what they allege, but they did not show that. Why are they supposed to show it at this stage? Because to show standing under Article III, you actually have to show that you've been injured. You have to at least allege an injury for which the defendant is responsible. Well, I think they allege it, but the problem is, and this may be true and it may in the end be fatal, they may not be able to show it. They don't have to show it in the complaint, do they? They have to show that the defendants are responsible for the harm. Now, you use the word show again. Why do they have to show it? Don't they just have to allege it? Or maybe you mean something different. No, they have to show standing. This is a question of getting to the court's jurisdiction. And therefore, the defendants can put in the record and the court can properly look at material saying they do not have standing. And it is then up to the plaintiffs. It's their burden to show jurisdiction, and they have to make at least some sort of minimal showing. Yeah, well, this sounds like kind of a miniature summary judgment procedure in which maybe they should have some discovery before we put them to the proof. Well, they have to show at least some sort of minimal nexus. No, I'm afraid. They have to allege something. Let me make myself clear, and maybe we can then move on. But at the pleading stage, I think they need do no more than allege. And this was dismissed at the pleading stage. Is that correct? This was dismissed at the pleading stage. So why don't you say they need to show something? Are you saying that they need to allege it with greater particularity in the complaint? Is that what you're telling me? Or do you mean to say they have to have evidence that goes along with the complaint? That would be quite unconventional. They alleged in general terms. They did not say plaintiff one, regent so-and-so, commissioner so-and-so did that. They did not do any of that. But this is federal court, and the pleading standard is set forth in Rule 8. Are you saying they didn't satisfy Rule 8? They did not. Well, I don't. Do you know what Rule 8 says? I do know what Rule 8 says. But they did not. There is no allegation, even an allegation, that the regents had anything to do with that statement. Was that the only statement that was before the court? I thought that there were newspaper stories and other statements by officials. There were newspaper stories. And let's look at this. This is a 1992 memo by Michael Aitken. He's not one of the defendants, first of all. So this shows nothing in terms of personal liability about any of the defendants in either case. And neither does that, except possibly the law school dean. But there you have affidavits who said, the law school dean said, I don't write the catalog. I don't review the catalog. It's that I have no knowledge of many statements, including this one, that are in there. You have to, if it were not so. I guess in our current posture, we have no idea how this law school catalog came to be written. Is that right? Well, we know that none of the defendants had anything to do with it. How do we know that? Because, first of all, only one defendant is even associated with the law school. But it sounds like the law school says we didn't write it. So I guess it didn't happen in the law school. That means that the law school guys are out of it, but there are a lot of others. I mean, what I'm after is, without discovery, how do we know that anything you're saying is true? It may turn out to be absolutely true, but how do we know that now? Because when you're trying to establish jurisdiction in a Section 1983 case and the parties say, you don't have standing because I didn't do that. I'm not even associated with that activity. And they put forward evidence, whether it be affidavits or other evidence, and we did in this case, that said the regents don't have anything to do with this, the commissioner doesn't have anything, though dean of the law school didn't. It's up to the other side to at least put forward something that says, no, to at least allege that he did have this, that this person did, and they did not make that kind of personal allegation. And so if you're suing, maybe they can sue the law school, maybe they can sue the university, but you can't sue an individual for something that you can't even make the vaguest of, that you don't even make an allegation to say, this person is personally responsible for that activity. I have a question for you, if I may. All we're dealing with here right now, as I understand it, is standing. We're not addressing whether, if that's the policy of the state, that's legitimate and enforceable. Am I right in that? Well, we know that that's not the policy of the state, because there's unrebutted evidence that all sorts of students who were full-time students, came in as full-time students, were granted. Okay. So we know that's not the policy of the state. I'm trying to understand how I know anything without findings of fact, you know, on these issues. There's no, the judge, the judges in the two cases didn't make findings, did they, about the underlying issue? They, well, they made findings with regard to standing. They made findings with regard to statute of supplementation. All right, okay. And so they did make those findings. Would it be, assuming that that policy was, if it was the state's policy, would give someone a claim, would the plaintiffs have to allege that all the defendants were responsible for, you know, putting that in the law school catalog, or just that the defendants had something to do with an underlying policy that was reflected in the law school brochure? Well, I think they'd have to show that they have, because they're being sued as individuals here. If they just want to challenge the policy and the implementation of the policy and how the school is doing it, they have to sue the school or the university system or the board of regents as an entity. That is not before you. They haven't done that. So I think they have to show, and this was the basis down below, that there's, before you can proceed with this, you have to at least show some sort of personal nexus. Between the particular defendant and this particular parent. It seems to me that's the essence of individual liability, is to show some. Otherwise. I'm not sure I understand why this is a standing question or a subject matter jurisdiction question. Anyway, why is it 12B1 if you're saying, yes, there may be a tort, a breach of contract, whatever. And the question is, did this person commit it? Why is that not something for summary judgment? Why is it a 12B1 motion? Well, because the question of standing, justiciability, rightness. Those are. Those are questions. Student says he's been injured. He's got standing to make a complaint. And he sues five people. Let's say one is the one who did it. He's got four others. Why is that standing? I guess I don't. Well, it's certainly. Those who did not do it. Yeah. Are not liable. Are not liable. They can say. A matter of dispute. Factual dispute about what did B do? What did A do? Well, once they raise that defense, you don't have standing. And it's not only that they didn't do it here. I think there are two elements of here. It's the rightness question. None of these students. None of them took it. Challenged the policy. Well, one did. He challenged it partway. Of the five. Of the six. One. But none of them said. We're going to go and apply for residency. And. And take it through. And see. If in fact this is the policy. Well, that's a different question. 12B1. It seems has to do with lack of jurisdiction over the subject matter. What is this whole dispute that we've been talking about have to do with jurisdiction over the subject matter? Well, that is the way the cases have said that. Standing. Is a jurisdictional issue. And rightness is a jurisdictional issue. It's maybe not apparent on the face of the rule, but that is what the cases say. And the defendants are able to bring it up. Bring it up. Challenge it. And put a burden. Of at least having some sort of. Some sort of showing that we're alleging that you did this. Okay. An argument of lack of standing can be raised by a 12B1 motion. Yes. And then and then there's some burden on the on the claimant in response to make some more particular allegation. That would show that they have standing to make the claim they're asserting. Yes. And and I don't that's not novel case law. I don't. You have to make a factual showing. Doesn't that mean you're entitled to discover to make the factual showing? No, you're only entitled to discovery relevant to the motion and the issue here. And here there was no question on the question of whether or not they had gone through and gotten an agency decision on their residency. That's not what we've been talking about. That's a different issue. I thought we were talking about the issue of whether these individual defendants had done anything wrong. And that's what I understood we were discussing. Now you're talking about a different. Well, there are. There are. There are two separate issues. Pardon me. Okay. But on this first issue, whether these individual defendants did anything, assuming that's a standing question and assuming this is the proper way to do it. Then you say it depends. I've got to make a factual showing. And they say, well, we wouldn't. We wanted to make a factual showing, but we weren't allowed to take discovery. Are you saying they have to make a factual showing, but they're not allowed to find out what the facts are? You they have to make they have to at least make factual allegations. And going back to what Judge Fletcher did, quoting from from the complaint or no, he was paraphrasing the complaint, but he was paraphrasing it. Well, I think probably accurately, but the complaint didn't did not spell out. And that was what Judge Thomas's problem was. Well, if a complaint isn't specific enough. Well, you have to then supposed to allow the parties to amend the complaint to make it specific. What when the issue is raised by the defendants that listen, you're not saying I in this complaint, you didn't say I did a thing. They have to at least come forward. They could have done it by an amendment. They had two years to either come forward with an affidavit that said, Regent so-and-so did this. Regent so-and-so did this. Two years. Nothing. Or they could have done it by amending the complaint. They did not. They offered no amendment. When the court decides that it's not specific enough, they thought it was specific. If a judge decides that a complaint is not sufficiently specific, don't the rules require that he then allow, offer an opportunity to amend rather than just dismissing? Well, it seemed they they had they would have had an opportunity. They had two years to amend. Our motion to dismiss was made first right out of the chute. They filed a complaint. We filed a motion to dismiss. Then for two years, they did not. They had that in front of them. They knew what our argument was. Why is this case sitting for two years? I doubt it's your fault. I don't think it's anyone's fault, Your Honor. Judge Lovell retired. I see. And he went on to senior status, and his cases were sort of passed around. And frankly, that's why Judge Thomas, going back to sit by designation, finally took it off. So two years is really not attributable to any fault of the parties here in front of us? No, I'm not alleging any fault. All I'm saying is it's not like this came this argument came upon them like a bolt from the blue. They had plenty of time to ---- But they didn't have a ruling during that period that suggested to them from the court that they were in trouble. All they had was your saying that they were in trouble. But they have an obligation, then, to at least make an allegation about who did what. Well, that's what you say, but they say they don't have to. I guess we'll wait around for the judge to tell them yes or no. No, but they ---- I think the case law says they do have an obligation under those circumstances. These are ---- this is ---- and once again, these are individuals who are operating on behalf of the university. And I think you have different standards. If I can pick up on the standing point that Judge Reinhart was talking about, standing usually ---- I mean, there's an awful lot of unhelpful boilerplate in the cases, but it seems to say that we look for purposes of standing to whether the plaintiffs have been injured. And I don't think there's any question but what the plaintiffs have alleged injury. There appears to be a serious question as to who caused the injury rather than whether they have been injured. Now, if the question is who caused the injury, that's not ordinarily a standing question. That's a question of, okay, did Joe do it or did Susie do it? And I sue them both and I find out. Well, but that goes to the second question. Did they even suffer injury? Because the rightness, you have to present yourself and get an adverse decision here. But does Patsy say that you ---- I think Patsy says the opposite of it. It's a 1983 complaint. You don't have to exhaust your administrative remedies. You can go straight to court. No, but Patsy has been qualified. I'm out of time. Thank you very much. I'd like to say one thing, and I don't want to make a big thing of it. We have a circuit rule that prohibits citing unpublished cases, which I think you weren't aware of. There are several of our unpublished memorandum dispositions that you cited in the brief. But I think you must not have been aware of the rule. No. Your Honor, if I could just take one second to explain. I don't want to make a big thing of it. Judge Siebel, in his order, cited an unsighted case. Well, yeah. And all I did ---- well, the other side cited and said, you know, Judge Siebel relied on this unsighted case. I said, well, yeah, he cited this unsighted case, but there are all sorts of other cases. That was one example. The only other example, I think, was in a long string of citations from a other circuit. There were about five citations. One was a Ninth Circuit unsighted case. I was in a quandary as to what to do about that. I did not cite the case. I put brackets there, and I said, unsighted Ninth Circuit case. Well, I suggest that you look at in the Young red brief pages 18, 19, and 20, and in the DeAngelo red brief pages 26 and 40. Well, I may stand corrected, Your Honor. And if so, I ---- Listen. In my view, it's an absolutely minor sin. Don't worry about it. Well, I apologize. I wasn't aware of it, and I would ---- Don't worry about it. Okay. This case has come here on a standing issue, and this is what Sid Thomas said in the first case. Plaintiffs assert that a widespread practice existed within the Montana University system to violate the written policy establishing a rebuttable presumption based on credit hours by substituting a de facto policy of an irrebuttable presumption. The evidence tendered by the plaintiffs led leads great credence to this argument. That's evidence presented without any discovery whatsoever. In the first case, we alleged that the defendant, and specifically Croft, so I'm going to pick on him because he's in both cases, that he distributed and was in charge or made sure that this policy was enforced in an unconstitutional fashion. In the second case, we actually have the proof that that is true. In the first case, it was alleged and not rebutted. In the second case, the appellees actually introduced the policies and procedures manual of the Board of Regents, and it's Exhibit 4 in their supplemental excerpts of record. And Item 10, and this exact policy is in the record in the cases, every time it excludes Item 10. But if you look at the effective date, every time it's only got nine items, it's after this case came about. I'm having trouble procedurally with this case. You can transform a motion to dismiss under 12b-6, and I assume under 12b-1, into a motion for summary judgment by the submission of items of evidence, so that it's no longer determined merely upon the pleading. And I gather there were some evidentiary matters in front of Judge Thomas. Yes. Was it thereby transformed into a summary judgment motion? We certainly contend that because he was considering evidence outside the pleadings, even if he was applying the 12b-6 standard, he should have interpreted the factual evidences in our favor. Did you ask for further discovery? In both cases. And at my recollection, and I think the record will prove me correct on this, we asked to file an amended complaint in Young v. Croft, the first case that sat for two years, and were denied that right. And we did that around the time the Court was actually having a hearing. I think we filed the formal briefs and then at the hearing asked for that. And did you also ask for additional discovery? In the second case, we asked for additional discovery, which was granted, but the case was dismissed before the deposition could take place. Before you could actually do much of it. Correct. And the – I want to show the connectivity with Croft's, who's in both cases, because that really is the standing issue. And I agree. I think when you read the opinions, this doesn't seem to really be standing. But number 10, in the policy that was effective during these cases, it says, the commissioner – this is Croft's – in consultation with the units shall prepare an operations manual to implement this policy. That's exactly what we're complaining about. We have a policy adopted by the Board of Regents which creates a rebuttable presumption, but in fact, it's being applied by every single unit of the university system in an unconstitutional fashion because it is an irrebuttable presumption. The proof of that, which exists in the second case, is this exhibit shows that he was assigned the task, Croft's, of implementing the residency policy, and that's exhibit 6, paragraph 10. He consulted with the units to implement that, and he prepared an operations manual for the system as a whole to implement the policy. Now he's charged, and the Board of Regents in the first case, are charged with the financial welfare of the university system, but when they go beyond the constitutional boundaries that they're obligated to stay within, they do something more. And in this case, they're really balancing this university budget on the backs of out-of-state students. Everybody that sees something like this that says one's classified as a non-resident, you retain that for three years of law study. The reason why is because as a law student, you can't go below six credits. You can't go below ten credits. All of the other university catalogs in the record say that what Croft said to a particular student that did appeal. That period, in bold, does not run for any period of time for which you are enrolled for seven or more credits. Croft is charged with implementing a policy that is being disseminated in every unit of this university system in the state of Montana consistently, and it is a reasonable inference that, and as alleged in the first complaint, that he actually is doing his job to implement the policy. What remedy are you seeking in this case? The remedy, and I do not believe it's been accomplished yet, if the class is certified, would be to prohibit it from happening because we contend that it still is not happening in a constitutional fashion. But what I'm really after is are you seeking only a prospective remedy or are you seeking a damage remedy in addition? And a damage remedy as well. And I guess we haven't gotten to the stage of various forms of qualified immunity, Eleventh Amendment. That's all somewhere out in the future. Correct. Okay. Correct. And the case was dismissed at the outset based on standing. The second case, it does need a little speaking of. The court determined that non-applicants cannot be victims of this policy. At least their claim is not right. Well, that's not the case. There is no requirement to apply to be a victim. And the court has seen that. By non-applicants, you mean people who are students who have not applied for in-state status? Right, because they read a letter that one of their friends gets or the policy that says it's not going to do you any good, that it cannot be done. This exhibit that we talked about not providing any support, the letter says right here that the board in 92, the Board of Regents made a significant change to the policy. It did change then. In writing, it became one that passes constitutional muster. But in practice, the students are being treated as out-of-state students regardless of where they reside. And it's just what was said in International Brotherhood. It's fair in form but discriminatory in operation. That's exactly the change that occurred in 1992. Thank you, counsel. Your time is up. Thank you. The case, just argued, will be submitted. Thank you all very much. The court will take a brief recess. All rise. Thank you. Thank you. Yes.
judges: Reinhardt, W Fletcher, Gould